## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

JOHN LEE FORD,

          Petitioner,

vs.

JERRY BURT,

          Respondent.

No. C05-0160

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.  Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.  Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    C.  State Application for Post-Conviction Relief . . . . . . . . . . . . . . . . . 3
    D.  Application For Further Review . . . . . . . . . . . . . . . . . . . . . . . 4
    E.  Remand for Resentencing and Appeal . . . . . . . . . . . . . . . . . . 5
    F.  Federal Application for a Writ of Habeas Corpus . . . . . . . . . . . . . 6

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    A.  Standard of review under 28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . 9
        1.  28 U.S.C. § 2254(d)(1) . . . . . . . . . . . . . . . . . . . . . . 10
        2.  28 U.S.C. § 2254(d)(2) . . . . . . . . . . . . . . . . . . . . . . 12
    B.  Requirement of Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . 12
    C.  Ineffective Assistance of Counsel . . . . . . . . . . . . . . . . . . . . . . 14
        1.  Juror Disqualification . . . . . . . . . . . . . . . . . . . . . . . 16
            a.  Reasonable Trial Strategy . . . . . . . . . . . . . . . . 17
            b.  Structural Defect . . . . . . . . . . . . . . . . . . . . . . 18
        2.  Sufficiency Of The Evidence . . . . . . . . . . . . . . . . . . . 21
        3.  Lesser Included Offenses . . . . . . . . . . . . . . . . . . . . . 24

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# I. INTRODUCTION

On October 10, 2005, the petitioner, John Lee Ford ("Ford"), submitted an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket Number 3). In his application, Ford challenges the legality of his conviction for second-degree sexual abuse in violation of Iowa Code Section 709.3 (1997). This matter is before the court pursuant to Ford's brief in support of his application for a writ of habeas corpus (Docket Number 10), the respondent's brief (Docket Number 11) and Ford's reply brief (Docket Number 13).

# II. PROCEDURAL BACKGROUND

## A. Trial

In the Iowa District Court in and for Linn County, Ford was charged with second-degree sexual abuse in violation of Iowa Code section 709.3 (1997). State v. Ford, No. FECR300006 (Linn County Dist. Ct. 1999).[1] With respect to pre-trial and trial matters, Duane Rohovit represented Ford. Trial commenced on June 7. 1999. On June 9, 1999, the jury found the defendant guilty of second-degree sexual abuse. On July 1, 1999, the Iowa District Court in and for Linn County sentenced Ford to an indeterminate term not to exceed 25 years.

## B. Direct Appeal

On July 2, 1999 Ford filed a notice of appeal. On appeal, Linda Del Gallo and Dennis D. Hendrickson represented Ford. In his appellate brief, Ford argued: (1) the Iowa District Court in and for Linn County erred when it admitted multiple hearsay statements into evidence; (2) his trial counsel was ineffective for failing to preserve the issue of whether multiple hearsay statements were improperly admitted; and (3) evidence submitted during his trial was insufficient to support a guilty verdict for second-degree

---

[1] Iowa state court criminal and civil records may be accessed at the following address: www.judicial.state.ia.us/online_records/. See Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

sexual abuse.  On December 13, 2000 the Iowa Court of Appeals affirmed Ford's conviction.  State v. Ford, 2000 WL 1834065 (Iowa Ct. App. 2000).

## C.  State Application for Post-Conviction Relief

On April 24, 2001 Ford filed an application for post-conviction relief and on June 20, 2002 he filed an amendment to his application.  In his Amended Application, Ford raised six issues: (1) Legislative Sentencing; (2) Absence of Intent Element; (3) Insufficiency of Evidence; (4) Ineffectiveness of Prior Counsel in Failing to Obtain Submission of Lesser Included and Lesser Offenses; (5) Denial of Jury Trial and Deliberations by Twelve Jurors; and (6) Sufficient Reason [Exists to Excuse Any Procedural Default].  Amended Application For Post-Conviction Relief, pp. 10-18.  The district court denied post-conviction relief but directed that Ford be brought back for resentencing and directed the sentencing judge to "specifically determine the applicability of Iowa Code Sections 902.12 and 903A.2 to this case."[2]  PCR Ruling, p. 3.  An appeal followed before the defendant was resentenced.  The Court of Appeals affirmed the district court and remanded for resentencing.  Ford v. State, 674 N.W.2d 685 (Iowa Ct. App. 2003).

---

[2] The district court found the following:

> [ Ford's] judgment and sentence did not make any reference to Iowa Code Section 902.12, which provides that a person serving a sentence for conviction of certain forcible felonies, including Sexual Abuse in the Second Degree, in violation of Section 109.13, shall serve 100 percent of the maximum term of the person's sentence and shall not be released on parole or work release except as otherwise provided in Section 903A.2. Section 903A.2(1)(b) provides that sentences of confinement under Section 902.12 are subject to a maximum accumulation of good time of 15 percent of the total sentence.

PCR Ruling, p. 1.

## D. Application For Further Review

On November 16, 2003 Ford filed an Application for Further Review with the Iowa Supreme Court. Ford alleged the following in his application:

### ISSUE I

> THE COURT OF APPEALS ERRED, AND ALSO ENTERED A DECISION THAT WAS IN CONFLICT WITH PRIOR DECISIONS OF THE SUPREME COURT OF IOWA, STATE V. STALLINGS, 658 N.W.2D. 106 (IOWA 1983) AND STATE V. COOLEY, 608 N.W.2D. 9 (IOWA 2000) WHICH REQUIRED A REVIEW FOR 'STRUCTURAL ERROR,' WHERE BEFORE JURY DELIBERATIONS, TWO JURORS AND AN ALTERNATE INFORMED THE TRIAL JUDGE THAT THEY WERE NOT ABLE TO HEAR ALL THE TRIAL TESTIMONY, AND ONE JUROR EXPLICITLY TOLD THE JUDGE IT WAS THE CHILDREN'S TESTIMONY THAT COULD NOT BE HEARD, AND THE JUDGE WITHOUT FURTHER INQUIRY, AND WITHOUT ADDRESSING OR EXPLAINING THE GROUNDS FOR JURY DISQUALIFICATION TO MR. FORD, NOR SEEKING HIS PERSONAL POSITION ON THE ISSUE, ALLOWED THESE JURORS TO DELIBERATE WITH THOSE JURORS WHO HEARD ALL THE TRIAL EVIDENCE.

Ford Application for Further Review, p. 2.

### ISSUE II

> THE IOWA COURT OF APPEALS ERRED BY FAILING TO LEGALLY CONCLUDE THAT TRIAL COUNSEL WAS INEFFECTIVE IN OMITTING FROM THE MOTION FOR DIRECTED VERDICT A CHALLENGE TO INSUFFICIENCY OF THE EVIDENCE TO SEXUAL ABUSE IN THE SECOND DEGREE AND AN OBJECTION THAT: THE SPECIFIED BODY PARTS NECESSARY FOR A "SEX ACT" UNDER CHAPTER 702.17 WERE NOT ESTABLISHED AS BEING INVOLVED IN EITHER OF THE TWO PURPORTED EPISODES AS RELATED BY THE CHILD, C.K. AND/OR THE IOWA COURT OF APPEALS ERRED BY FAILING TO LEGALLY CONCLUDE THAT APPELLATE COUNSEL WAS

> INEFFECTIVE FOR FAILING TO RAISE THIS
> UNPRESERVED DIRECTED VERDICT ISSUE AS AN
> INEFFECTIVENESS OF TRIAL COUNSEL CLAIM AND
> FOR FAILING TO SEEK REVIEW OF TRIAL COUNSEL'S
> PRESERVED REQUEST FOR LESSER INCLUDED
> OFFENSES.

Ford Application for Further Review, p. 5

ISSUE III

> THE IOWA COURT OF APPEALS ERRED IN FAILING
> TO LEGALLY CONCLUDE THAT CHAPTER 902.12 WAS
> NULL AND VOID, ESPECIALLY SINCE THE ANALYSIS
> OF THE APPELLATE COURT BELOW DISAGREED
> WITH THE ANALYSIS OF THIS COURT IN STATE V.
> IOWA DISTRICT COURT FOR BLACKHAWK COUNTY,
> 616 N.W.2D.575 (IOWA 2000), AND SINCE CHAPTER
> 902.12, PREVIOUS TO AMENDMENT, ABROGATED
> ALL PAROLE ELIGIBILITY, AND THIS STATUTE
> VIOLATED THE SEPARATION OF POWERS WHICH
> REQUIRED AN "INDETERMINATE" SENTENCE BE
> IMPOSED BY THE JUDICIARY. (CHAPTERS 902.3 AND
> 902.9(2), ICA).

Ford Application for Further Review, p. 11. The Iowa Supreme Court denied further review on February 6, 2004. Procedendo issued on February 13, 2004.

**E. Remand for Resentencing and Appeal**

The defendant was resentenced on remand on March 31, 2004. Ford appealed the re-sentencing order, arguing that the district court had the discretion to waive Iowa Code § 902.12 insofar as it applied to him. The Iowa Court of Appeals affirmed the district court's application of the sentencing provisions, finding that the district court had no discretion to waive the mandatory minimum sentence provided for in the Iowa Code sections. State v. Ford, 698 N.W.2d 338 (Iowa Ct. App. 2005). Procedendo issued on July 6, 2005.

### F.  Federal Application for a Writ of Habeas Corpus

On October 17, 2005 Ford filed an application for a writ of habeas corpus.  Ford alleges that his trial and appellate counsel rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.  On December 13, 2005 the respondent filed an answer to Ford's application and provided relevant state court documents.  On March 13, 2006 Ford filed a brief on the merits.  On March 17, 2006 the respondent filed a responsive brief.  On June 23, 2006 Ford submitted a reply brief.

### III.  FACTUAL BACKGROUND

The Iowa Court of Appeals summarized the facts presented at trial as follows:

> Ford babysat Courtney, an eight-year-old girl, and Ashley, her playmate, between December 1998 and February 1999. Courtney testified Ford touched her "private" with his fingers while she played Nintendo in the living room.  Ford, Courtney, and Ashley were laying on the floor.  Ford asked Courtney to lay on his back.  Courtney was laying on Ford's back, covered with a blanket, when he unbuttoned her pants and touched her under her clothes with his fingers.  Ashley, also covered with a blanket, was laying beside Courtney and Ford.  Ashley could not see Ford touch Courtney.  Courtney testified this occurred between five and ten times.  Courtney testified Ford also picked her up, carried her to her bedroom, pulled down her pants, and licked her privates.  Ford did this more than once.
>
> Theresa, Courtney's mother, testified Ford lived nearby with Trina, Ashley's mother.  Ford volunteered to watch Courtney.  Between the fall of 1998 and January or February 1999, Ford watched Courtney and Ashley between fifteen and twenty-five times.  Theresa testified about an instance when Ford and Trina came over to her home.  Ford told Theresa that Amanda, another child in the neighborhood, said Ashley told her about Ford touching her (Ashley's) private parts and peeing in her (Ashley's) mouth.  Ford was concerned Amanda might spread rumors about Courtney and Dennis, Courtney's father.  The next day, Theresa asked Courtney if anything had happened to her.  Courtney told her mother Ford had touched

and licked her privates when she and Ashley were playing Nintendo in the living room. Theresa testified her husband, Dennis, approached Courtney later and asked her the same question. Courtney told her father Ford had touched her and licked her approximately twenty times in the living room when she and Ashley were playing Nintendo.

Dennis testified he asked Courtney if anybody had ever touched her or done anything inappropriate. She told him Ford had them get naked, then licked and fondled Courtney and Ashley while they played Nintendo. Courtney did not tell her father about Ford taking her to her bedroom and licking her while laying on the floor. She did not tell her father about laying on Ford's back while he reached around and molested her.

Patti, Courtney's day care provider, testified she learned of the allegations against Ford directly from him. After speaking with Ford, Patti asked Courtney about the allegations. Courtney previously had not volunteered any information to Patti about sexual abuse. Courtney told Patti she and Ashley were naked in the house when Ford was there, and Ford had touched her privates and licked her vagina.

Susan, an interviewer at the Child Protection Center, testified Courtney told her Ford had her lay on top of him on her stomach. He would reach around with one hand and touch her in her crotch area under her clothing. Courtney told Susan that Ford would be in her bedroom with her and ask her to lay on the floor, then lick her private area.

Kathleen, a pediatrician, examined Courtney on February 26, 1999. She found an abrasion and a scab in Courtney's genital area, but labeled her findings "nonspecific," and not diagnostic of sexual abuse. Kathleen testified it is uncommon to find physical findings of abuse in sexually abused children. Ashley testified Ford never did anything to her when he babysat the two girls. She never saw Ford touching Courtney. She testified Ford was on the couch when she and Courtney played Nintendo on the floor. Ashley denied having told Amanda that Ford had touched and licked her, or peed in her mouth.

Trina, Ashley's mother, testified she heard Ford ask Courtney if anything happened to her. Courtney responded "no." Courtney's mother was present during this conversation. Ashley never told Trina that Ford had touched or licked her. Ford testified. He explained he has had rheumatoid arthritis since 1988, and broke his pelvic bone in seven pieces and his hip in two places in 1995. Therefore, he cannot lie down on the floor without pain. He testified it would have been painful for him to lie on the floor with Courtney on his back. He denied any wrongful contact with Courtney.

Amanda took the stand as a rebuttal witness for the State. She testified Ashley told her Ford pulled down Courtney's pants and licked her "private." Ashley told Amanda she had been afraid of Ford when she denied this statement previously.

State v. Ford, 2000 WL 1834065 (Iowa App. 2000).

After the court issued jury instructions in Ford's trial and during recess, one of the jurors mentioned to a court attendant that they had difficulty hearing some of the child witnesses. Upon hearing of this, the trial judge questioned each juror in chambers as to whether they had heard enough of the testimony to deliberate. Two of the jurors indicated that they had difficulty hearing testimony, but felt they were able to deliberate.

THE COURT: Mr. Feldmann, I just have a quick question for you. Some of the jurors have expressed apparently some concerns about being able to hear the testimony, so my question to you is whether you have been able to hear the witnesses' testimony.
JUROR: Done very good, ma'am, except the first-
THE COURT: witness.
JUROR: [C.K.].
THE COURT: Do you feel that you've heard enough that you are in a position that you can deliberate?
JUROR: Yes, I am.
THE COURT: Okay, thank you.

\* \* \*

THE COURT: Ms. Crawford, based on what you stated to me and some of the other concerns about hearing the testimony, we're just asking each person individually whether they were

able to hear the testimony, so the question to you is were you
able to hear the testimony?
JUROR: Most of it but not all of it.
THE COURT: I really don't want you to comment beyond
that.
JUROR: Not all of it.
THE COURT: The second question is to you whether you feel
you are able to deliberate in this case.
JUROR: Oh, yes.
THE COURT: Okay, thank you.

Ford Trial Transcript, pp. 150, 152. The remaining jury members had no problem hearing

the children's testimony. Ford's trial counsel raised no objection to the trial judge's

procedure and Ford's appellate counsel did not raise the issue on appeal. Ford first raised

this issue in his PCR proceedings in the context of ineffective assistance of counsel and

again in his Application For Further Review.

## IV.  CONCLUSIONS OF LAW

In his application for a writ of habeas corpus, Ford asserts that his trial and

appellate counsel rendered ineffective assistance in violation of the 6th and 14th

Amendments to the United States Constitution.

### A.  Standard of review under 28 U.S.C. § 2254

Federal courts possess limited powers to review state convictions under 28 U.S.C.

§ 2254. Carter v. Armontrout, 929 F.2d 1294, 1296 (8th Cir. 1991). Courts only grant

habeas corpus relief for errors of constitutional magnitude. Id.; Newlon v. Armontrout,

885 F.2d 1328, 1336 (8th Cir. 1989), cert denied, 497 U.S. 1038 (1990).

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court
shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless the
adjudication of the claim–
(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." Weaver v. Bowersox, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. See id. at 1029-30.

Ford must show more than an error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair–"that there is a 'reasonable probability that the error complained of affected the outcome of the trial–i.e., that absent the alleged impropriety, the verdict probably would have been different.'" Newlon, 885 F.2d at 1337 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.) (en banc), cert denied, 483 U.S. 1023 (1987).

### 1. 28 U.S.C. § 2254(d)(1)

Under 28 U.S.C. § 2254(d)(1), Ford may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners under the AEDPA. See Newman v. Hopkins, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of Williams); Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); See also Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Pursuant to Williams, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." Williams, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412.

An "unreasonable application" of Supreme Court precedent can arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407 (citing Green v. French, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established federal law.'" Id. at 407-08. Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

Id. at 411 (emphasis added).

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Ford's claims. See, e.g., Rousan v. Roper, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); Newman, 247 F.3d at 850-52 (same); Weaver v. Bowersox, 241 F.3d 1024, 1029-30 (8th Cir. 2001) (same); Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (same).

### 2. 28 U.S.C. § 2254(d)(2)

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact."[3] Weaver, 241 F.3d at 1030. Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Ford rebuts that presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); See also Weaver, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings . . ."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" Weaver, 241 F.3d at 1030.

### B. Requirement of Exhaustion

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum.

---

[3] 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(b)(1).[4]  A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court.  Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 276 (1971); Miller v. Lock, 108 F.3d 868, 871 (8th Cir. 1997); Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993); McDougald v. Lockhart, 942 F.2d 508, 510 (8th Cir. 1991) see also 28 U.S.C. § 2254(c).[5]

The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

> refer to a specific federal constitutional right, a particular
> constitutional provision, a federal constitutional case, or a state
> case raising a pertinent federal constitutional issue.

Ashker, 5 F.3d at 1179 (quotations and citations omitted); accord Thomas v. Wyrick, 622 F.2d 411, 413 (8th Cir. 1980).  A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings.  Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Flieger v. Delo, 16 F.3d 878, 884 (8th

---

[4] 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts
> of the State, or
> (B) (i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

[5] 28 U.S.C. § 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies
> available in the courts of the State, within the meaning of this section,
> if he has the right under the law of the State to raise, by any available
> procedure, the question presented.

Cir. 1994); see also Keeney v. Tamayo-Reyes, 504 U.S. 1, 8 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court on each habeas claim after the Iowa Court of Appeals rejects an appeal argument. See O'Sullivan v. Boerckel, 526 U.S. 838, 845-48 (1999) (abrogating Dolny v. Erickson, 32 F.3d 381 (8th Cir. 1994)). Failure to raise a habeas claim "in every tier of the state post-conviction relief proceedings [results] in a procedural default of such claim." Sillick v. Adult, 358 F. Supp. 2d 738, 766 (N.D. Iowa 2005). A petitioner may avoid procedural default by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [by] demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[6] Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### C. Ineffective Assistance of Counsel

Ford argues ineffective counsel due to:

> (1) The failure of trial counsel to object and move for mistrial, and the failure of appellate counsel to raise on direct appeal an ineffectiveness of counsel claim, challenging an unconstitutional procedure whereby the trial court before the commencement of jury deliberations conducted a voir dire of all jurors and ascertained that two jurors did not hear all the evidence; however, the state trial court ruled that the affected jurors could reach a verdict on the trial evidence they did hear. (USCA, Art. III, Sec. 2); (2) The failure of trial counsel and

---

[6] The Coleman court noted that "We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them. Cf. McCleskey v. Zant, 499 U.S. 467, 491, 111 S. Ct. 1454, 1468, 113 L. Ed. 2d 517 (1991) ("Though Fay v. Noia, supra, may have cast doubt upon these propositions, since Fay we have taken care in our habeas corpus decisions to reconfirm the importance of finality")." Id.

appellate counsel to raise at both tiers of the state court, the omission from the marshaling instruction of the essential element of intent; (3) Failure of prior counsel to raise an insufficiency of evidence claim on all the grounds available to prior counsel at the time of their representation: whether a "sex act" occurred; (4) Appellate counsel's failure to present on appeal the trial court's omission of a lesser included offense of an assault which may result in physical contact, but where the physical contact did not involve body parts proscribed as a "sex act" under Chapter 702.17, ICA.

Ford Habeas Petition, p. 7 (docket 3).

Ford failed to raise his second claim related to the omission of the element of intent from the marshaling instruction all the way to the Iowa Supreme Court. Ford also fails to demonstrate cause and prejudice resulting from his failure to raise this claim, or that the court's failure to consider the claim will result in "a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. As such, Ford procedurally defaults that claim. However, Ford preserved his remaining ineffective assistance of counsel claims.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Strickland v. Washington, 466 U.S. 668, 684 (1984).

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364 (1993) (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal as of right. Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

The Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell, 506 U.S. 364 (1993). Under Fretwell, counsel is constitutionally ineffective when:

> (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the

> adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (internal citations omitted). The court applies deferential review of trial counsel's performance and presumes competent and effective trial counsel. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)).

Where conduct does not prejudice the defendant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as the result of counsel's performance. Lockhart v. Fretwell, 506 U.S. 364 (1993); West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. West v. United, 994 F.2d at 513 (quoting Fretwell). Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Williams, 994 F.2d at 1291 (quoting Strickland). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert denied, 489 U.S. 1088 (1989).

## 1.  Juror Disqualification

Under his first claim, Ford alleges ineffective counsel due to:

> (1) The failure of trial counsel to object and move for mistrial, and the failure of appellate counsel to raise on direct appeal an ineffectiveness of counsel claim, challenging an unconstitutional procedure whereby the trial court before the commencement of jury deliberations conducted a voir dire of all jurors and ascertained that two jurors did not hear all the

16

> evidence; however, the state trial court ruled that the affected
> jurors could reach a verdict on the trial evidence they did hear.
> (USCA, Art. III, Sec. 2).

Ford Habeas Petition, p. 7 (docket 3).

Specifically Ford asserts that his trial lawyer's failure to object and move for mistrial was unreasonable trial strategy and amounted to a "structural defect" necessitating reversal, his appellate lawyer's failure to raise this issue on appeal as an ineffectiveness of trial counsel claim constituted ineffective appellate counsel, and that his trial lawyer's failure to tell Ford of his reasons for not objecting equaled an involuntary waiver of Ford's right to a 12 member jury. Ford Habeas Brief, p. 25.

### a. Reasonable Trial Strategy

Ford acknowledges that the PCR court and Iowa Court of Appeals accepted Ford's trial lawyer's decision not to object as reasonable trial strategy. Ford Reply, p. 5. However, Ford argues that "[t]here existed no reasonable 'tactical' decision for not objecting." Ford Reply, p. 6.

The Iowa Court of Appeals detailed the lawyer's dilemma as follows:

> By way of deposition testimony, defense counsel stated he did
> not object to the deliberation of the two jurors because he did
> not want to accentuate the testimony of the alleged victim. He
> felt that it could only help his client that two of the jurors did
> not hear every word of the child's testimony concerning the
> alleged sexual abuse. He also wrestled with the situation,
> knowing that any inconsistencies in the three children's
> testimony could help the defense, but would also underscore
> the potentially more damaging testimony of the victim.

Ford v. State, 674 N.W.2d 685 (Iowa Ct. App. 2003).

The Iowa Court of Appeals found the lawyer's reasons for not objecting "were clearly a trial tactic or strategy, and even if improvident or miscalculated did not necessarily amount to ineffective assistance of counsel." citing State v. Oetken, 613 N.W.2d 679, 683-84 (Iowa 2000). This court agrees. Ford's lawyer refrained from objecting due to his reluctance to highlight testimony potentially damaging to his client.

Such a decision remains within a lawyer's "reasonable professional judgment." See Lamar v. Graves, 326 F.3d 983, 986 (8th Cir. 2003) (court finds reasonable trial strategy where trial counsel did not object where a juror "slept through part of the state's case"). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693. The Court will not disturb the Court of Appeals findings regarding this claim.

### b. Structural Defect

Ford asserts that the Iowa Court of Appeals should have applied "structural error" rather than a "harmless error" analysis.[7] citing Arizona v. Fulminante, 499 U.S. 279, 309-311 (1991). Ford argues that the Iowa Court of Appeals should have found that the judge's handling of the matter was an abuse of discretion and that there was ineffective assistance of counsel for failing to object to such abuse of discretion. Ford argues that "a juror who has not heard all the evidence in the case or the Court's instructions as to the applicable principles of law is grossly unqualified to render a verdict." (Ford Trial Brief, p. 27) citing State v. Hurd, 480 S.E.2d 94 (S.C. App. 1996); People v. Valerio, 141 A.D. 585, 529 N.Y.S.2d 350, 351 (1988) (Incumbent upon trial court to "conduct a probing and

---

[7]     The Supreme Court has identified two types of constitutional errors that may occur during a trial. See Fulminante, 499 U.S. at 307-10, 111 S. Ct. 1246. The first type, "trial errors," are amenable to harmless error analysis, "occur[ ] during the presentation of the case to the jury," and are susceptible of "quantitative [ ] assess[ment] in the context of other evidence presented in order to determine whether ⋯ [the error] was harmless beyond a reasonable doubt." Fulminante, 499 U.S. at 307, 111 S. Ct. 1246. "Structural errors," on the other hand, call into question the very accuracy and reliability of the trial process and thus are not amenable to harmless error analysis, but require automatic reversal. See id. at 309-10, 111 S. Ct. 1246; Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (ruling that structural errors "require[ ] automatic reversal ⋯ because they infect the entire trial process").
McGurk v. Stenberg, 163 F.3d 470, 474 (8th Cir. 1998).

tactful inquiry to determine whether a sworn juror is unqualified," and the "Court must not speculate . . . but ascertain the juror's state of mind" and must place its reasons for excusing or retaining the juror on the record.). Ford further asserts that his trial counsel did not consult him concerning counsel's reasons for not objecting to the inclusion of the two impaired jurors and therefore Ford could not "exercise an informed decision as to how to proceed, and be aware of what trial rights were being waived on his behalf through the acquiescence of trial counsel." Ford Reply, p. 6. Ford equates this lack of consultation to an involuntary waiver to his right to a 12 person jury under Iowa law.

The respondent compares the issue faced by the trial court to that of a sleeping juror, as addressed in Lamar v. Graves, 326 F.3d 983 (8th Cir. 2003). The Lamar court noted that it would not grant the petitioner relief on his claim of ineffective counsel where the trial counsel did not object to a juror who slept through part of the state's case. In Lamar:

> Counsel testified that he withheld his objection because he did not mind if a juror missed part of the state's presentation. We believe that the state court did not unreasonably apply Supreme Court decisions by concluding that counsel's strategy was the "result of reasonable professional judgment" and did not prejudice Mr. Lamar. See Strickland, 466 U.S. at 690, 104 S. Ct. 2052; cf. Mitchell v. Kemna, 109 F.3d 494, 496 (8th Cir. 1997), cert denied, 522 U.S. 880, 118 S. Ct. 205, 139 L. Ed. 2d 141 (1997).

Id. at 986.

The respondent further cites to State v. Hampton, 549 N.W.2d 756 (Wis. App. 1996), for the proposition that a defendant must show prejudice. Id. at 758. (court finds that "it is universally recognized that before inattentiveness warrants a mistrial, there must be a determination regarding prejudice. If the inattentiveness was not prejudicial, the defendant is not entitled to a mistrial." (citing State v. Dyess, 370 N.W.2d 222, 231-32 (1985))).

The defendant's only claims here that are not defaulted allege ineffective assistance of counsel. Ford raised his abuse of discretion and jury trial waiver arguments for the first

time in PCR proceedings together with his claims of ineffective assistance of counsel. The PCR court properly noted that "[g]enerally, a claim not raised on direct appeal cannot be raised in a post-conviction relief proceeding unless the applicant can demonstrate a sufficient cause or reason for not properly raising the issue previously. Section 822.8, The Code, and Ledezma v. State, 626 N.W.2d 134, 141 (Iowa 2001)." PCR Ruling, p. 10. The PCR court then acknowledged that,

> Ineffective assistance of appellate counsel constitutes a sufficient reason for failing to raise the issue of ineffective assistance of trial counsel on direct appeal. Id. To prove appellate counsel's deficient performance resulted in prejudice, the applicant must show his ineffective assistance of counsel claim would have prevailed if it had been raised on direct appeal. Id.

PCR Ruling, NO. LACY 040534, p. 10. As Ford had not raised his substantive arguments regarding abuse of discretion and jury waiver on direct appeal, the PCR court examined whether ineffective assistance of the defendant's direct appeal attorney provided the necessary cause and prejudice to excuse this default:

> I have reviewed the entire record. The Trial Judge elected to allow the two jurors in question to decide for themselves whether they had heard enough of the testimony of the witnesses to deliberate. This decision raises a justifiable concern, but is not an abuse of discretion. No one but the two jurors knows what portions of the testimony each juror did not hear. The Trial Judge gave the jurors oral and written jury instructions. There is a rebuttable presumption that jurors will follow such instructions when given by the Trial Judge. The two affected jurors could not have voted to convict the Defendant unless each heard evidence relating to either of the two sex acts, which proved Defendant guilty beyond a reasonable doubt. After reviewing the record, I conclude that there is not a reasonable probability that but for counsel's alleged unprofessional errors, that the result of the proceeding would have been different. Therefore the Petitioner has not been prejudiced.

PCR Ruling, NO. LACY 040534, p. 10.

Due to his failure to establish prejudice, the PCR court found that Ford could not show ineffective assistance of counsel. Therefore, the defendant's arguments concerning the judge's error being an abuse of discretion and amounting to a denial of a 12-person jury were defaulted. The Iowa Court of Appeals affirmed the PCR court's findings addressing only the ineffective assistance of counsel claims, noting that the defendant could not show prejudice for ineffective assistance because "[e]ven if a juror had difficulty hearing some of the children's testimony, there was other testimony from which a reasonable jury could convict Ford." Ford v. State, 674 N.W.2d 685 (Iowa Ct. App. 2003). This court finds that the Iowa Court of Appeals properly analyzed Ford's nondefaulted ineffective assistance of counsel claim.

## 2. Sufficiency Of The Evidence

Ford next alleges that "prior counsel were ineffective by failing to raise a sufficiency of the evidence challenge to the state's case on the grounds that the physical contact described by the child did not involve the proscribed body parts required for commission of a sex act." Ford Trial Brief, p. 44-52. The Iowa Court of Appeals addressed this claim as follows:

> Sufficiency of the Evidence. Ford next claims his counsel was ineffective for failing to challenge the sufficiency of the evidence, arguing the evidence did not support the finding of a "sex act" as defined in Iowa Code section 702.17. The State contends the evidence as a whole established Ford performed a sex act on C.K.
> The eight-year-old victim testified that Ford touched her privates with his fingers and licked her privates. When asked to explain the term "privates," the victim testified as follows:
> Q: Okay; is there any-during the times when John baby-sat for you, was there anything that you felt that happened that was wrong?
> A: Yes.
> Q: Can you tell me what that was?
> A: That he was touching my private.
> Q: Okay; and what is your private?
> A: My-

Q: Okay; let me ask you this: Are you familiar with the word "vagina?"

A: No.

Q: Okay; where is your private located?

A: On my butt.

Q: Okay; is that where you go to the bathroom?

A: Yes.

Susan Smith, a counselor with the Child Protection Center in Cedar Rapids testified as to her interview with C.K.,

[C.K.] had said that the defendant, Mr. Ford, had laid down in the living room of her home and had her lay on top of him on her stomach and would reach around with one hand and come up underneath her and touch her. She pointed to her crotch area as the area under clothing both on the outside of her private area and on the inside while his stepdaughter was laying on the floor next to him opposite the side of the hand that was touching her. She also reported Mr. Ford being in her room with her asking her to lay on the floor on her back and then licking her private area which, again, she demonstrated was the crotch area.

"Sex act" is defined in the Iowa Code as "any sexual contact between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person····" Iowa Code § 702.17.

Ford argues that because C.K. testified her privates meant her "butt," the alleged acts do not constitute a "sex act" as defined in the Iowa Code. However, that argument assumes a very narrow reading of the testimony, including that of the victim herself, which expanded on defining the area touched. In addition, there was other evidence in the record, namely Susan Smith's testimony, that indicated Ford touched and licked C.K.'s genitalia.

We agree with the district court that counsel breached no essential duty in failing to challenge the sufficiency of the evidence on this claim. We further agree that Ford has failed to establish he was prejudiced as the testimony sufficiently referred to a specified body part in the definition of a "sex act" as given to the jury.

Ford v. State, 2003 WL 23219954, 4 (Iowa App.2003).

As noted previously, to prevail on his claim of ineffective assistance of counsel, Ford must show:

> (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (internal citations omitted). The court thus turns to see if Ford established prejudice. Where conduct does not prejudice the defendant, the court need not address the reasonableness of that conduct. Id. at 691; Williams, 994 F.2d at 1291. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Williams, 994 F.2d at 1291 (quoting Strickland).

As referenced by the respondent, the Eighth Circuit describes the proper standard for review of sufficiency of the evidence claims as follows:

> To prevail on this due process claim, he must demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In applying this standard, "[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited···· We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994).

Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002). Under this limited review, the court agrees with the respondent and the PCR judge's ruling that the jury could have found proof beyond a reasonable doubt that the victim's testimony regarding the defendant's touching of her "private" or "butt" referred to a "sex act" even though she did not use the precise wording contained in Iowa Code Section 702.17, which referred to contact with a victim's vagina, anus, or genitalia. The respondent correctly points out that "it is not necessary that child sex abuse victims use the Latin or 'correct' terms in describing anatomical

features or sexual acts." citing <u>In re L.K.S.</u>, 451 N.W.2d 819, 823 (Iowa 1990) (court finds sufficient evidence of sexual abuse where child stated stepfather put his "wiener" on her "pee"). This court supports the conclusions of the Iowa Court of Appeals.

### 3. Lesser Included Offenses

During his criminal trial, Ford requested, and the trial court denied,[8] inclusion of lesser included offenses. Ford alleges in his habeas brief that:

> Appellate Counsel Was Ineffective in Not Raising on Direct Appeal That the Court Erred in Not Submitting the Lesser Included Offense of Assault, and Mr. Ford Was Prejudiced by the Lack of a Jury Finding That Would Permit The Jury to Find Physical Contact Between the Parties but Not Involving the Specific Body Parts Necessary for a Sex Act.

Ford Habeas brief, p. 2. The PCR court found the trial court correctly found "as a matter of law, none of the offenses set forth in [Ford]'s application as amended or brief [were] lesser-included offenses under a charge of Sexual Abuse in the Second Degree." PCR ruling p. 7. The Iowa Court of Appeals further found as follows:

> Again, Ford has failed to establish prejudice as a result of the alleged ineffectiveness. If the jury determined there was no physical contact as charged and as defined in Iowa Code section 702.17, the jury would have returned a verdict of not guilty. Because the jury found the necessary contact to establish a sex act, it found Ford guilty of sexual abuse in the second degree.
>
> In sum, Ford has failed to establish that any of the above alleged failures of the trial and appellate counsel prejudiced him such that the outcome of the case would have been different. We therefore affirm the denial of his application for post conviction relief.

---

[8] The trial court based its ruling upon <u>State v. Constable</u>, 505 N.W.2d 473 (Iowa 1993)(court finds that "assault with intent to commit sexual abuse and simple assault were not lesser included offenses of sexual abuse in the second degree." <u>Id.</u> at 477). The <u>Constable</u> court distinguished its holding from <u>State v. Turacek</u>, 456 N.W.2d 219 (Iowa 1990), where "the defendant had aided and abetted another in performing sex acts on the victim by force and against the victim's will, without regard to the victim's age." <u>Id.</u> at 221.

Ford v. State, 674 N.W.2d 685 (Iowa App. 2003). This court agrees with the findings of the PCR court and the Iowa Court of Appeals.

## V.  CONCLUSION

In sum, Ford is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of Ford's claims neither resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law nor resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[9] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that Ford's application for writ of habeas corpus be denied.

December 27, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[9]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.